Wedgewood Care Ctr., Inc. v Kravitz (2021 NY Slip Op 04731)





Wedgewood Care Ctr., Inc. v Kravitz


2021 NY Slip Op 04731


Decided on August 18, 2021


Appellate Division, Second Department


Miller, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 18, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
ROBERT J. MILLER
COLLEEN D. DUFFY
LINDA CHRISTOPHER, JJ.


2017-12681
 (Index No. 5545/14)

[*1]Wedgewood Care Center, Inc., etc., respondent,
v
Eric Kravitz, appellant.



APPEAL by the defendant, in an action to recover damages for breach of contract, from an order of the Supreme Court (Antonio I. Brandveen, J.), dated November 9, 2017, and entered in Nassau County. The order granted the plaintiff's motion for summary judgment on the complaint and denied the defendant's motion for summary judgment dismissing the complaint.



Blau Leonard Law Group, LLC, Huntington, NY (Steven Bennett Blau of counsel), for appellant.
Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, Lake Success, NY (Jeffrey R. Neuman of counsel), for respondent.



MILLER, J.


OPINION & ORDER
Under state and federal law, a nursing facility is prohibited from requiring a third party to guarantee the payment of a resident as a condition of the resident's admission to the facility. As this case illustrates, however, a nursing facility is permitted to require a third party to undertake other kinds of contractual obligations, and a nursing facility may recover damages that were proximately caused by a failure of the third party to fulfil those obligations. Where it is alleged that a variety of different contractual obligations have been breached, each such theory of liability must be proved, defended, and analyzed independently. Where an admissions agreement containing pages of third-party obligations is both a requirement for admission and aggressively enforced, the fine legal distinctions between an unlawful third party guarantee and a lawful agreement laden with additional affirmative obligations may have little practical significance for the third party. This is especially true where, as here, the nursing facility's litigation is directed solely at the third party, and recovery is not sought from the estate of the actual resident of the nursing facility. For the reasons that follow, we modify the order appealed from, and remit the matter for further proceedings in accordance herewith.
I. Factual and Procedural Background
The plaintiff is a private corporation that is engaged in the business of providing room, board, and skilled nursing home care services. It is undisputed that the plaintiff provided room, board, and skilled nursing care services to Beatrice Kravitz (hereinafter the deceased resident) beginning on November 14, 2011, until the time of her death on January 7, 2013. The plaintiff asserts that "a balance" for these services in the amount of $49,061.11 remains due and owing to the plaintiff.
The plaintiff commenced this action against the deceased resident's son—the defendant, Eric Kravitz. The complaint asserted one cause of action, sounding in breach of contract.
The complaint alleged that on November 14, 2011, the defendant signed an admission [*2]agreement (hereinafter the admission agreement), pursuant to which he undertook an affirmative contractual duty to perform nine separate types of independent acts for the benefit of the plaintiff. The complaint alleged that "[t]he defendant failed to comply with . . . his obligations under the [admission agreement]," and that "by reason of the defendant's default, . . . [the plaintiff] has suffered damages in the sum of $49,061.11." The plaintiff alleged that the defendant was personally liable for the entire outstanding sum. Neither the deceased resident nor her estate was named as a party to the action. The complaint did not allege that the plaintiff had made any claim to the estate of the deceased resident for the balance that was allegedly due.
The defendant interposed an answer which set forth nine affirmative defenses. The eighth affirmative defense alleged that the "[p]laintiff is barred from maintaining its causes of action pursuant to the Nursing Home Reform Act, 42 USC § 1296r [sic], and federal and state regulations." The defendant also asserted a counterclaim against the plaintiff to recover compensatory and punitive damages pursuant to General Business Law § 349. In this regard, the defendant contended that the plaintiff, in "this and other similar lawsuits," had engaged in "deceptive business practices" that were directed at New York consumers and which involved the collection of debts.
The plaintiff subsequently moved for summary judgment on the complaint and for the entry of a judgment in the principal sum of $49,061.11, plus interest from November 14, 2011—the date that the defendant allegedly entered into the admission agreement. The plaintiff's motion papers did not specifically seek dismissal of the defendant's affirmative defenses or address his counterclaim.
As relevant here, the plaintiff contended that the defendant breached the admission agreement in three ways: (1) by having access to the deceased resident's assets and failing to use those assets to pay the plaintiff; (2) by failing to adequately respond to the plaintiff's request for documents; and (3) by failing to fully administer his mother's estate. The plaintiff asserted, in essence, that its evidentiary submissions eliminated all triable issues of fact in this action and that the defendant was personally liable for the total outstanding balance owed by the deceased resident.
The defendant opposed the plaintiff's motion, and separately moved for summary judgment dismissing the complaint. In arguing that the complaint failed to state a cause of action, the defendant asserted that it was conclusory and failed to adequately specify the contractual obligation that he allegedly breached or the manner in which the breach occurred. The defendant contended that the complaint was "legally defective and should be dismissed as a matter of law."
The defendant alternatively argued that he was entitled to summary judgment because his evidentiary submissions demonstrated that he did not possess legal access or control over the deceased resident's assets, and that, in any event, the deceased resident did not have any available assets within the meaning of Nursing Home Reform Act. The defendant similarly contended that he did not have access or control over the deceased resident's documents, and that, in any event, the record demonstrated that any failure to provide documentation was not a proximate cause of the damages sought by the plaintiff.
In the order appealed from, the Supreme Court determined that "[t]he admission agreement required . . . that [the defendant] provide the plaintiff with all relevant information and documentation regarding all potential third-party payers, and that [the defendant] timely apply and meet the requirements of third-party payers, including Medicaid." The court continued: "The admission agreement also provided that the defendant could be held personally liable if any act or omissions on his part caused or contributed to the nonpayment of the plaintiff's fees."
The Supreme Court determined that the plaintiff demonstrated, prima facie, its "entitlement to summary judgment as a matter of law on the breach of the contract between the parties." In this regard, the court stated that the plaintiff "established, as a matter of law, that [the defendant] breached his obligations under the admission agreement by failing to provide requested information and documentation concerning the finances of [the deceased resident]." Accordingly, the court granted the plaintiff's motion for summary judgment on the complaint, and denied the defendant's motion for summary judgment dismissing the complaint.
The Supreme Court did not specifically address the alternative theories of liability articulated in the plaintiff's motion papers, or analyze that branch of the defendant's motion which was to dismiss the complaint for failure to state a cause of action. The order stated that the arguments which were "not specifically addressed [were] denied."
II. Legal Analysis
The defendant appeals. On appeal, the defendant contends that the Supreme Court erred in granting the plaintiff's motion for summary judgment, and that the court should have granted his motion for summary judgment dismissing the complaint, either because the complaint failed to state a cause of action, or because he affirmatively demonstrated his entitlement to judgment as a matter of law.
The plaintiff contends in response that the complaint states a valid cause of action, and that the Supreme Court properly granted its motion for summary judgment on the complaint.
A. Failure to State a Cause of Action
The defendant contends that the complaint failed to provide him with adequate notice of the specific acts or omissions that allegedly constituted a breach of the admission agreement. The defendant also contends, for the first time on appeal, that the deceased resident's estate is an indispensable party to this action, and that the complaint should be dismissed on this alternative ground.
1. Specificity
On a motion to dismiss for failure to state a cause of action, "the pleading is to be afforded a liberal construction" (Leon v Martinez, 84 NY2d 83, 87, citing CPLR 3026). The facts alleged in the complaint must be accepted as true, and the plaintiff is entitled to receive the benefit "of every possible favorable inference" (Leon v Martinez, 84 NY2d at 87). "Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 142; see Myers v Schneiderman, 30 NY3d 1, 11).
However, "allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration, nor to that arguendo advantage" (Maas v Cornell Univ., 94 NY2d 87, 91 [internal quotation marks omitted]; see Simkin v Blank, 19 NY3d 46, 52). In addition, where, as here, evidentiary material is considered in connection with a motion to dismiss for failure to state a cause of action, dismissal should not eventuate "unless it has been shown that a material fact as claimed by the pleader . . . is not a fact at all and unless it can be said that no significant dispute exists regarding it" (Guggenheimer v Ginzburg, 43 NY2d 268, 275; see Rabos v R & R Bagels & Bakery, Inc., 100 AD3d 849, 851-852).
Here, the complaint asserted one cause of action, sounding in breach of contract. The essential elements of a cause of action to recover damages for breach of contract are (1) the existence of a contract, (2) the plaintiff's performance pursuant to that contract, (3) the defendant's breach of the contract, and (4) damages resulting from that breach (see Hausen v North Fork Radiology, P.C., 171 AD3d 888, 892; De Guaman v American Hope Group, 163 AD3d 915, 917; Elisa Dreier Reporting Corp. v Global NAPs Networks, Inc., 84 AD3d 122, 127).
The defendant contends that the complaint failed to allege the specific provisions of the admission agreement that were allegedly breached, and failed to set forth the manner in which the breach allegedly occurred. The defendant argues that there was no allegation in the complaint that he maintained any legal control over the deceased resident's affairs, and that his personal liability for the deceased resident's unpaid bills was grounded solely upon his execution of the admission agreement. The defendant noted that the admission agreement could not require him to serve as a third party guarantee of payment under federal law.
Pursuant to the Nursing Home Reform Act (hereinafter the NHRA), a "nursing facility" is defined to include an institution that, among other things, is primarily engaged in providing "skilled nursing care and related services for residents who require medical or nursing care" (42 USC 1396r[a][1][A]). The parties do not dispute that the admission agreement is subject to the NHRA, and both parties cite to its provisions on this appeal.
As relevant here, the NHRA provides that "[w]ith respect to admissions practices, a nursing facility must . . . not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility" (42 USC 1396r[c][5][A][ii]; see 42 CFR 483.15[a][3]; see also 10 NYCRR 415.3[b][1]). However, the foregoing subparagraph "shall not be construed as preventing a facility from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's [*3]income or resources for such care" (42 USC 1396r[c][5][B][ii]; see 42 CFR 483.15[a][3]; see also 10 NYCRR 415.3[b][6]).
Here, the complaint alleged that the defendant undertook to "ensure . . . payment from the [deceased resident's] funds . . . to meet [the deceased resident's] obligations to [the plaintiff]." The complaint also alleged that "the defendant had access to the [deceased resident's] assets and income as defined under the terms of the [admission agreement], but failed to pay from the [deceased resident's] income and resources to which he had access." The complaint asserted that "by reason" of the defendant's breach of the admission agreement, the plaintiff had "suffered damages in the sum of $49,061.11."
"On a motion for summary judgment premised on failure to state a cause of action, the court must consider evidentiary material in addition to the pleadings" in order to determine whether the plaintiff actually has a cause of action (Seidler v Knopf, 186 AD3d 889, 890). Where the parties' agreement is before the court in a breach of contract action, "its provisions establish the rights of the parties and prevail over conclusory allegations of the complaint" (805 Third Ave. Co. v M.W. Realty Assoc., 58 NY2d 447, 451). Indeed, "the interpretation of an unambiguous contract is a question of law for the court" (Ark Bryant Park Corp. v Bryant Park Restoration Corp., 285 AD2d 143, 150).
The admission agreement in this case was submitted in connection with the underlying motion practice. It stated that it was an agreement "between [the plaintiff] . . . and [the deceased resident] . . . [a]nd [the defendant]." The defendant signed the admission agreement as the deceased resident's "designated representative." The deceased resident did not sign the admission agreement.
As relevant here, the admission agreement provided: "A Resident's obligation to guarantee payment is personal and limited to the extent of his/her finances." The admission agreement continued: "The Designated Representative is responsible for providing payment from the Resident's income and resources to the extent he/she has access to such income and resources without the Designated Representative incurring personal financial liability." Analogous language appeared elsewhere in the admission agreement.
The foregoing provisions of the admission agreement adequately set forth the relevant contractual obligations of the defendant, and demonstrate that the admission agreement did not render the defendant a "third party guarantee of payment" (42 USC 1396r[c][5][A][ii]; cf. Knight v John Knox Manor, Inc., 92 So 3d 111, 118-119 [Ala Civ App]). The admission agreement merely required the defendant to facilitate payment from the deceased resident's available income and resources, and only to the extent that the defendant had access to such income and resources and only if he could do so without incurring any personal financial liability (see generally Morningside Acquisition I, LLC v Gandy, 66 Misc 3d 276, 281 [Sup Ct, Bronx County]; Hillside Manor Rehabilitation & Extended Care Ctr., LLC v Williams, 2011 NY Slip Op 33319[U] [Sup Ct, Queens County]; Woodbury Center for Health Care v Langlan, 2008 NY Slip Op 33250[U] [Sup Ct, Nassau County]; New York Cong. Nursing Ctr. v Gilchrist, 21 Misc 3d 1136[A], 2008 NY Slip Op 52394[U] [Sup Ct, Kings County]; Amsterdam Nursing Home Corp. v Lang, 16 Misc 3d 1138[A], 2007 NY Slip Op 51727[U] [Sup Ct, New York County]; Prospect Park Nursing Home, Inc. v Goutier, 12 Misc 3d 1192[A], 2006 NY Slip Op 51537[U] [Sup Ct, Kings County]).
Contrary to the defendant's contention, the plaintiff adequately alleged the breach of an enforceable contractual duty such that the defendant's personal liability for the deceased resident's unpaid bills was not grounded upon a promise to ensure the deceased resident's payment (see Sunshine Care Corp. v Warrick, 100 AD3d 981, 981-982; Troy Nursing & Rehabilitation Ctr., LLC v Naylor, 94 AD3d 1353, 1354-1355; Wedgewood Care Ctr., Inc. v Sassouni, 68 AD3d 979, 980; Putnam Nursing & Rehabilitation Ctr. v Bowles, 239 AD2d 479, 481; see also Long Is. Care Ctr., Inc. v Goodman, 137 AD3d 874, 876).
The defendant further contends that the complaint failed to adequately set forth the manner in which the breach allegedly occurred. The defendant argues that the complaint failed to specify the manner in which the defendant possessed legal access or control of the deceased resident's assets or that the deceased resident's income or resources were available to the defendant to pay for the deceased resident's care in the facility.
The defendant again fails to account for the impact of the evidentiary submissions that were before the Supreme Court at this procedural stage of the action. A motion to dismiss for failure to state a cause of action may be made "at any time" (M & E 73-75 LLC v 57 Fusion LLC, 189 AD3d [*4]1, 6; see GMAC Mtge., LLC v Coombs, 191 AD3d 37, 43-44), but the availability of evidence in the record at later procedural stages of the action may impact the merits of such a motion (see Seidler v Knopf, 186 AD3d at 890). Indeed, "affidavits may be used freely to preserve inartfully pleaded, but potentially meritorious, claims" (Rovello v Orofino Realty Co., 40 NY2d 633, 635; see Popescu v Forexware, LLC, 158 AD3d 543, 543). In the current procedural posture and on this record, "the allegations of [the] complaint, supplemented by a plaintiff's additional submissions . . . must be given their most favorable intendment" (Arrington v New York Times Co., 55 NY2d 433, 442 [emphasis added]; see Seidler v Knopf, 186 AD3d at 890; Rogal v Wechsler, 135 AD2d 384, 384).
Here, the complaint was supplemented by the admission agreement and other evidence submitted in connection with the underlying motion practice. Liberally construed, and as supplemented by the record, the complaint was sufficient to put the defendant on notice of the "occurrences . . . intended to be proved" (CPLR 3013; see Popescu v Forexware, LLC, 158 AD3d at 543). As described more fully below, the cause of action was "set forth with sufficient factual specificity and fullness, so as to identify the transaction and indicate the theory of redress to enable the court to control the matter and the adversary to prepare" (Guggenheimer v Ginzburg, 43 NY2d at 275).
In sum, the Supreme Court properly denied that branch of the defendant's motion which was for summary judgment dismissing the complaint for failure to state a cause of action (see Seidler v Knopf, 186 AD3d at 890-891). Under the circumstances, we need not, and do not, consider whether the complaint states any other cognizable theories of liability for breach of this admission agreement.
2. Indispensable Party
As previously noted, the defendant additionally contends that the deceased resident's estate is an indispensable party to this action, and that the complaint should be dismissed on this alternative ground. The plaintiff responds that the issue is improperly raised for the first time on appeal and that, in any event, the deceased resident's estate is not an indispensable party as she was not a signatory to the admission agreement.
"Persons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants" (CPLR 1001[a]). "When a person who should be joined under [CPLR 1001(a)] has not been made a party and is subject to the jurisdiction of the court, the court shall order [that person] summoned" (CPLR 1001[b]). "Nonjoinder of a party who should be joined under [CPLR 1001] is a ground for dismissal of an action without prejudice unless the court allows the action to proceed without that party under the provisions of that section" (CPLR 1003; see CPLR 1001[b]).
"CPLR 1001 and 1003 afford the courts wide latitude in the addition or deletion of parties" (Solomon v Solomon, 136 AD2d 697, 697-698; see Schmidt v Schmidt, 99 AD2d 775, 776). "The absence of a necessary party may be raised at any stage of the proceedings, by any party or by the court on its own motion" (Migliore v Manzo, 28 AD3d 620, 621; see Solomon v Solomon, 136 AD2d at 698; Albert C. v Joan C., 110 AD2d 803; Schmidt v Schmidt, 99 AD2d at 776). Contrary to the plaintiff's contention, "the issue of nonjoinder may be raised at any time: in the pleadings, by motion to dismiss (see CPLR 3211[a][10]), at the trial or on appeal" (3 Weinstein-Korn-Miller, NY Civ Prac: CPLR ¶ 1001.03 [2021]; see Miller v Wendy Joan St. Wecker Trust U/A Aug. 28, 1997, 173 AD3d 1007, 1009).
Although the issue of nonjoinder may be raised at any time, the connection between this action and the deceased resident's estate should have been apparent from the outset of this litigation, and the defendant provides no explanation for his failure to raise this issue prior to this appeal. As the plaintiff correctly contends, the complaint asserted a single cause of action, for breach of the admission agreement, and the plaintiff and the defendant were the only signatories to that agreement (see Migliore v Manzo, 28 AD3d at 622; see generally TK Mktg. v National Benefit Life Ins. Co., 160 AD2d 665, 665). Neither the plaintiff's cause of action nor the defendant's counterclaim sought any damages from the deceased resident or her estate (cf. Troy Nursing & Rehabilitation Ctr., LLC v Naylor, 94 AD3d at 1354), and the pleadings did not allege that the deceased resident or her estate was in any way liable for the independent contractual duties that were allegedly breached by the defendant (see Putnam Nursing & Rehabilitation Ctr. v Bowles, 239 AD2d at 481; cf. Restatement [Second] of Judgments § 49; Restatement [Second] of Contracts § 290[2]). [*5]Under the circumstances, we decline to consider, in the first instance, "whether there are any other necessary parties who should be joined in this action and, if so, the appropriate procedural disposition for effecting joinder" (De Ruscio v Jackson, 164 AD2d 684, 688; see Censi v Cove Landings, Inc., 65 AD3d 1066, 1068). The defendant, if he be so advised, may raise this issue upon remittitur, at which time the Supreme Court may consider these issues de novo (see e.g. Censi v Cove Landings, Inc., 65 AD3d 1066; De Ruscio v Jackson, 164 AD2d 684).
B. The Plaintiff's Motion for Summary Judgment
The defendant next contends that the Supreme Court erred in granting the plaintiff's motion for summary judgment because the plaintiff failed to sustain its initial burden of demonstrating a prima facie case on its cause of action to recover for breach of contract. The defendant contends that the plaintiff failed to eliminate all triable issues of fact with respect to (1) the parties' intent to contract, and (2) the defendant's alleged failure to provide information or documentation.
"A plaintiff moving for summary judgment on a cause of action asserted in a complaint generally has the burden of establishing, prima facie, all of the essential elements of the cause of action" (Poon v Nisanov, 162 AD3d 804, 806 [internal quotation marks omitted]; see Nunez v Chase Manhattan Bank, 155 AD3d 641, 643; Stukas v Streiter, 83 AD3d 18, 23). "By contrast, a defendant moving for summary judgment dismissing one of the plaintiff's causes of action may generally sustain his or her prima facie burden by negating a single essential element of that cause of action" (Poon v Nisanov, 162 AD3d at 806 [internal quotation marks omitted]; see Nunez v Chase Manhattan Bank, 155 AD3d at 643).
"To defeat summary judgment, the nonmoving party need only rebut the prima facie showing made by the moving party so as to demonstrate the existence of a triable issue of fact" (Poon v Nisanov, 162 AD3d at 806; see Alvarez v Prospect Hosp., 68 NY2d 320, 324; Stukas v Streiter, 83 AD3d at 23-24). On the other hand, a motion for summary judgment "shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party" (CPLR 3212[b]; see Alvarez v Prospect Hosp., 68 NY2d at 324).
1. Intent to Contract
The defendant initially contends that the plaintiff failed to eliminate triable issues of fact as to whether the defendant was induced to execute the admission agreement by misrepresentations that were allegedly made by one of the plaintiff's employees at the time that the defendant executed the admission agreement (see generally Baptist Home of Brooklyn, N.Y. v Schott, 74 AD3d 849, 850-851; Daughters of Sarah Nursing Home Co. v Frisch, 170 AD2d 752, 753). This contention is raised for the first time on appeal and is not properly before this Court (see Zafran v Zafran, 28 AD3d 752, 753; see also Ku, Fu-Tien v Gu, Ying Zhi, 186 AD2d 88, 88). Accordingly, under the circumstances, we do not reach this issue.
2. Information and Documentation
In the order appealed from, the Supreme Court concluded that "[t]he admission agreement required . . . that [the defendant] provide the plaintiff with all relevant information and documentation regarding all potential third-party payers, and that [the defendant] timely apply and meet the requirements of third-party payers, including Medicaid." In awarding the plaintiff summary judgment, the court stated that the plaintiff "established, as a matter of law, that [the defendant] breached his obligations under the admission agreement by failing to provide requested information and documentation concerning the finances of [the deceased resident]."
The defendant contends that the plaintiff's evidentiary submissions failed to establish that he had access to any relevant documents or information, or that he refused to cooperate with any requests for information or documentation that were made to him by the plaintiff during the relevant time period.
The plaintiff asserts that the defendant breached the admission agreement by failing to provide requested documents and information regardless of whether he actually had access to those documents or information. The plaintiff maintains that the defendant's defense of no access does not bear on his liability because access is not required for breach. The plaintiff asserts that it did not need to meet the burden of proving that the defendant had access to the deceased resident's [*6]information and documentation. The plaintiff alternatively contends that it submitted evidence demonstrating that the defendant had access to the requested documents and information, and that he failed to provide those requested materials.
On this record, the Supreme Court erred to the extent that it concluded that the plaintiff established its prima facie entitlement to summary judgment on so much of the complaint as alleged breach of a contractual duty to cooperate with the plaintiff and third-party payors by failing to provide them with documents or information regarding the deceased resident.
In support of its position, the plaintiff relies on two provisions of the admission agreement. The first provision generally provided that "the Resident and/or Designated Representative agree to take all necessary steps to ensure that the Facility and its associated providers receive payment from [Medicare and/or Medicaid] and/or other available sources consistent with this Agreement." The second provision cited by the plaintiff stated that although the designated representative "can not, and shall not, serve as a third party guarantee of payment, . . . the Designated Representative will be held personally responsible and liable . . . [for] failing to provide requested information and/or documentation to the Facility or third party payor, such as an insurer or Medicaid, and/or . . . providing false, misleading or incomplete information and/or documentation."
The plaintiff is correct that the admission agreement does not explicitly condition a designated representative's personal liability upon the representative's access to the requested information and documentation. Of course, the admission agreement also did not include language that would have made it clear that a designated representative would be held strictly liable for a failure to provide information or documents to which the designated representative did not have any personal access or control. Under general principles of contract construction, any ambiguity in a portion of the admission agreement should be construed against the party that drafted it (see 67 Wall St. Co. v Franklin Natl. Bank, 37 NY2d 245, 249; Goldhirsch v St. George Tower & Grill Owners Corp., 142 AD3d 1044, 1046).
As a general matter, and in other contexts, a contractual duty to cooperate requires the party to provide, upon request, information or documents that are within the party's possession or control (see generally Coleman v New Amsterdam Cas. Co., 247 NY 271, 276; DeLuca v RLI Ins. Co., 187 AD3d 709, 712-713). In this case, the plaintiff did not identify any particular document or any specific information that was allegedly withheld by the defendant. Instead, the plaintiff contends on appeal that the defendant was contractually obligated to have the deceased resident sign a release of her financial records, and to obtain certain unidentified documents or records from other entities or individuals.
The plaintiff's contentions are unsupported by the text of the admission agreement, which did not obligate or empower the defendant to exercise control over any third parties. The admission agreement stated that the defendant would not be held personally liable for the deceased resident's full payment, but that he would "be held personally responsible and liable if his/her actions or omissions have caused and/or contributed to non-payment of the [plaintiff's] fees" (emphasis added). By this language, the defendant only undertook a personal obligation to cooperate with the plaintiff and third-party payors. He did not undertake a duty to ensure the performance of any third parties, or otherwise assume liability for their independent acts or omissions (cf. Restatement [Second] of Contracts §§ 10, 88; 9 Corbin on Contracts § 52.2; accord Bell v Day, 32 NY 165, 175).
As relevant here, the defendant's duty to cooperate under the admission agreement required him to respond to requests from the plaintiff and third-party payors for any document or information that was within his possession or control. Contrary to the plaintiff's contention, the admission agreement did not require the defendant to provide documents or information that were not within his possession or control (accord Amsterdam Nursing Home Corp. v Lang, 16 Misc 3d 1138[A], 2007 NY Slip Op 51727[U]).
Contrary to the plaintiff's alternative contention, its evidentiary submissions were insufficient to demonstrate that the defendant actually had possession or control over any of the information or documents that the plaintiff requested. Notably, the Supreme Court did not identify the specific information and documentation that the defendant failed to provide, and it made no finding that the defendant actually had access to any such documents or information during the relevant time period.
The deceased resident did not execute the admission agreement, and the admission agreement itself did not purport to grant the defendant any legal authority over the deceased [*7]resident's affairs (see New York Cong. Nursing Ctr. v Gilchrist, 21 Misc 3d 1136[A], 2008 NY Slip Op 52394[U]). Contrary to the plaintiff's contention, certain letters allegedly sent by the defendant's sister to the plaintiff, regardless of their admissibility, did not demonstrate that the defendant had possession or control over any document or information requested by the plaintiff. The plaintiff's employees did not claim to have personal knowledge of this issue, and their testimony was largely comprised of conclusory assertions that the defendant had been generally uncooperative and had breached the admission agreement. In all, the plaintiff's submissions were insufficient to establish that the defendant had possession or control over any document or information requested by the plaintiff. This conclusion is particularly evident given the plaintiff's failure to specifically identify the particular information or documents allegedly withheld by the defendant (cf. Wedgewood Care Ctr., Inc. v Sassouni, 68 AD3d at 981).
In all, the plaintiff failed to establish, prima facie, that the defendant breached a contractual duty to cooperate with the plaintiff and third-party payors by failing to provide them with requested documents or information regarding the deceased resident. Accordingly, the Supreme Court erred to the extent that it granted the plaintiff's motion for summary judgment on that ground.
3. The Deceased Resident's Assets
The plaintiff contends that the Supreme Court should have granted its motion for summary judgment on the alternative theory that the defendant breached the admission agreement by failing to use his access to assets that were available to the deceased resident to compensate the plaintiff for services rendered to her. Although the court did not expressly analyze this issue, we reach it as an alternative ground for affirmance (see Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539; Park Slope Auto Ctr., Inc. v Papa, 190 AD3d 754). The plaintiff's contention is without merit.
As previously discussed, the admission agreement required the defendant to facilitate payment from the deceased resident's available income and resources only to the extent that the defendant had access to such income and resources and only if he could do so without incurring any personal financial liability. This duty is consistent with the NHRA, which permits "an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care" (42 USC 1396r[c][5][B][ii]; see 42 CFR 483.15[a][3]; see also 10 NYCRR 415.3[b][6]).
Here, in support of its motion, the plaintiff submitted evidence demonstrating that the defendant had actual control over a certain joint stock account, and had been appointed under a certificate of voluntary administration for the limited purpose of closing one bank account in the amount of approximately $5,000.00, in or about January 2013. The plaintiff's evidence demonstrated that these assets were, at least in part, the property of the deceased resident and that they were, at some point after the execution of the admission agreement, within the defendant's control.
Although the plaintiff's submissions demonstrated that the defendant had actual control over certain assets which belonged to the deceased resident during the relevant time period, the plaintiff failed to demonstrate that those assets were "available to pay for care in the facility" at the time the defendant exercised that control (42 USC 1396r[c][5][B][ii]; see generally Eades v Kennedy, PC Law Offices, 799 F3d 161, 171 [2d Cir]; cf. Sunshine Care Corp. v Warrick, 100 AD3d at 982; Troy Nursing & Rehabilitation Ctr., LLC v Naylor, 94 AD3d at 1356; Putnam Nursing & Rehabilitation Ctr. v Bowles, 239 AD2d at 480-481). To the contrary, the plaintiff's submissions included evidence demonstrating that the defendant used at least a portion of these assets to set up an irrevocable trust to pay the deceased resident's funeral expenses. Accordingly, the plaintiff failed to establish, prima facie, that the defendant breached the admission agreement by failing to use his access to assets that were available to the deceased resident to compensate the plaintiff for services rendered to the deceased resident (see Field Home-Holy Comforter v Warns, 2014 WL 7398904, 2014 US Dist LEXIS 179285 [SD NY, Dec. 23, 2014 No. 12 CV 9285 (VB)]; Prospect Park Nursing Home, Inc. v Goutier, 12 Misc 3d 1192[A], 2006 NY Slip Op 51536[U] [Civ Ct, Kings County]).
The plaintiff also contends that the defendant has standing to petition the Surrogate's Court to reach other assets which allegedly belonged to the deceased resident's estate. Assuming that such a contractual duty was undertaken and is enforceable, the plaintiff failed to demonstrate, [*8]prima facie, the existence of any other assets comprising the deceased resident's estate, or that any such assets were available to pay the outstanding sums owed by the deceased resident to the plaintiff at the time of her death (42 USC 1396r[c][5][B][ii]).
The plaintiff does not raise any additional grounds for affirmance. Since the plaintiff failed to sustain its prima facie burden of demonstrating its entitlement to judgment as a matter of law on its cause action alleging breach of contract (see McMahan v McMahan, 66 AD3d 970, 970-971), its motion should have been denied regardless of the sufficiency of the defendant's opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
C. The Defendant's Motion for Summary Judgment
Finally, the defendant contends that summary judgment should be granted in his favor. In this regard, the defendant argues that, even if he breached a contractual duty to cooperate with the plaintiff and third-party payors by failing to provide them with requested documents or information regarding the deceased resident, any such breach was not a proximate cause of the plaintiff's alleged damages.
In support of his motion, the defendant submitted evidence demonstrating that damages alleged in the complaint were incurred during a period when the deceased resident was not covered by Medicaid because she possessed certain "excess resources." The defendant's evidentiary submissions demonstrated, prima facie, that the plaintiff ultimately obtained all of the information and documentation that was needed to process the deceased resident's Medicaid application, and that Medicaid did not deny coverage for that period on the ground that the application was untimely, or due to any failure to provide the plaintiff or any third-party payor with documentation or information.
The plaintiff contends that it was not required to demonstrate that the defendant's failure to provide information or documentation had any impact on the resident's Medicaid eligibility, and that it was damaged by the defendant's failure to cooperate regardless of whether it had alternative means of obtaining the requested information or documentation. The plaintiff's contention is without merit.
The admission agreement did not state that the defendant would be held strictly liable for any interruption in Medicaid coverage. Nor did it give the plaintiff the right to seek liquidated damages. Rather, it stated that the defendant would "be held personally responsible and liable if his/her actions or omissions have caused and/or contributed to non-payment of the [plaintiff's] fees" (emphasis added). Accordingly, contrary to the plaintiff's contention, the admission agreement expressly limited the scope of the defendant's liability to circumstances where his own breach of the agreement constituted a proximate cause of the plaintiff's damages.
The defendant's submissions demonstrated, prima facie, that his alleged failure to provide documentation or information did not cause or contribute to the non-payment of the plaintiff's fees (see Ozone Acquisition, LLC v McCarthy, 128 AD3d 920, 921; see also Meadowbrook Ctr., Inc. v Buchman, 149 Conn App 177, 191-194, 90 A3d 219, 229-231 [App Ct, Conn.]). In opposition, the plaintiff failed to raise a triable issue of fact (cf. Presbyterian Home for Cent. NY, Inc. v Thompson, 136 AD3d 1421, 1423). However, the plaintiff is correct that the defendant's proximate cause argument is limited to so much of the complaint as alleged the breach of a duty to cooperate. Accordingly, under the circumstances, the Supreme Court should have granted that branch of the defendant's motion which was for summary judgment dismissing so much of the complaint as alleged a breach of a contractual duty to cooperate with the plaintiff and third-party payors by failing to provide them with documents or information regarding the deceased resident.
III. Conclusion
In light of the foregoing, we remit the matter for further proceedings on so much of the complaint as alleged a breach of a contractual duty to use access to assets available to the deceased resident to compensate the plaintiff for services rendered to the deceased resident, and on the defendant's counterclaim to recover damages for violations of General Business Law § 349.
Accordingly, the order is modified, on the law, (1) by deleting the provision thereof granting the plaintiff's motion for summary judgment on the complaint, and substituting therefor a provision denying the plaintiff's motion, and (2) by deleting the provision thereof denying that branch of the defendant's motion which was for summary judgment dismissing so much of the complaint as alleged a breach of a contractual duty to cooperate with the plaintiff and third-party [*9]payors by failing to provide them with documents or information regarding the deceased nonparty Beatrice Kravitz, and substituting therefor a provision granting that branch of the defendant's motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings on so much of the complaint as alleged a breach of a contractual duty to use access to assets available to the deceased nonparty Beatrice Kravitz to compensate the plaintiff for services rendered to that deceased nonparty and on the defendant's counterclaim to recover damages for violations of General Business Law § 349.
CHAMBERS, J.P., DUFFY and CHRISTOPHER, JJ., concur.
ORDERED that the order is modified, on the law, (1) by deleting the provision thereof granting the plaintiff's motion for summary judgment on the complaint, and substituting therefor a provision denying the plaintiff's motion, and (2) by deleting the provision thereof denying that branch of the defendant's motion which was for summary judgment dismissing so much of the complaint as alleged a breach of a contractual duty to cooperate with the plaintiff and third-party payors by failing to provide them with documents or information regarding the deceased nonparty Beatrice Kravitz, and substituting therefor a provision granting that branch of the defendant's motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings on so much of the complaint as alleged a breach of a contractual duty to use access to assets available to the deceased nonparty Beatrice Kravitz to compensate the plaintiff for services rendered to that deceased nonparty and on the defendant's counterclaim to recover damages for violations of General Business Law § 349.
ENTER:
Aprilanne Agostino
Clerk of the Court