Danko v WNYT-TV, LLC. (2026 NY Slip Op 50001(U))

[*1]

Danko v WNYT-TV, LLC.

2026 NY Slip Op 50001(U)

Decided on January 5, 2026

Supreme Court, Albany County

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 5, 2026
Supreme Court, Albany County

Robert Danko, Plaintiff,

againstWNYT-TV, LLC., MARK MULHOLLAND, CHRIS ONORATO, JON HITCHCOCK, MICHAEL GOOT, JOSH KOUMJIAN, ALLEN BECKNER, ZACH RICHTER, and JOHN DOE [1 &2] inclusive, the names of the last 2, Defendants being fictious and currently unknown to Plaintiff, Defendants.

Index No. 904931-25

Jacquelyn N. Schell 
BALLARD SPAHR LLP 
1675 Broadway, 19th Floor 
New York, NY 10019 
andAnna Kaul BALLARD SPAHR LLP 
2000 IDS Center 
80 South 8th Street 
Minneapolis, MN 55402 
Counsel for DefendantsGerard V. Amedio, Esq. 
Attorney for the PlaintiffThe Law Offices of Gerard V. Amedio, P.C.340 Broadway, Suite 11 
Saratoga Springs, NY12866 

Peter A. Lynch, J.

INTRODUCTIONThis is an action for defamation for which Plaintiff seeks money damages, and injunctive relief.[FN1]

STATEMENT OF FACTS
At the time referenced in the Amended Complaint, Plaintiff had been a police officer for 16 years and was promoted to police chief of the Cambridge-Greenwich Police Department on July 3, 2024.[FN2]
One week later, on July 10, 2024, Plaintiff was arrested and charged with unlawful imprisonment and harassment by the Washington County Sheriff's Office, and the case was pending in the Salem Town Court.[FN3]
 Plaintiff concedes the charges arose out of a domestic incident with his wife, in context of a divorce action.[FN4]
Plaintiff also claims he had a romantic relationship with Jacqueline Slater, who previously employed by WNYT as a reporter and anchor, and that Ms. Slater has a sexual harassment lawsuit against WNYT.[FN5]
Plaintiff claims WNYT was obsessed with broadcasting his arrest story.[FN6]

Plaintiff pled his claim as follows:
7. WNYT picked up the story of my arrest almost immediately. Since then, they have continued airing and publishing stories about me. They have reported on me significantly more than any other local news outlet.8. The beginning of their reporting was erroneous and sensational. On July 12, 2025, they ran the story of my arrest and at the same time included a graphic of a supporting deposition of a different case involving more severe allegations of long-term domestic violence and assault. Despite being informed that this was inaccurate, WNYT ran the story with the same graphic for three days. I know this because I watched the coverage live, as well as watched the video that was published on their website along with the new story . . . 10. I ultimately resolved the criminal charges with a plea to a noncriminal violation of disorderly conduct. WNYT initially reported this correctly, however they soon reverted listing the charges from the initial arrest and reporting that I had "pled guilty to the charges"."[FN7]On December 16, 2024, Plaintiff pled guilty to disorderly conduct in satisfaction of the initial [*2]charges.[FN8]
The defendants consist of a local news station (WNYT) and its reporters and newscasters, who reported the foregoing incident on television. Plaintiff claims Defendants falsely and maliciously made defamatory claims against Plaintiff on their new broadcast, including but not limited to the following:
23. On July 12, 2024, Defendant WNYT published a news story on their nightly broadcast related to the arrest of the Plaintiff. Approximately 10 seconds into the news story, the video of the news anchor is replaced with a scrolling graphic. The scrolling graphic is a copy of a Supporting Deposition filed in Colonie Town Court in the case "The People of the State of New York -vs- Justin E. Danko (DOB 
 XX/XX/1985). The Supporting Deposition which was redacted to protect the name of the deponent, outlines an incident that allegedly occurred between the deponent and Justin E. Danko. The graphic published by Defendant WNYT highlights the following statement included in that deposition: "He told me that he knows how to hit me so that it won't leave marks."24. On July 12. 2024, Defendant WNYT was informed that they were running an incorrect graphic on their report regarding the Plaintiff.25. On July 14. 2024, Defendant WNYT published a news story on their website, as well as on their nightly broadcast, entitled "Local police chief who was arrested due in court on Monday." The same Supporting Deposition graphic remained on the news story which remained available online on July 15, 2024.26. On December 16, 2024. Defendant WNYT reported that the Plaintiff had pled guilty to disorderly conduct.27. On January 9, 2025. Defendant WNYT published a news story on their website entitled "Cambridge-Greenwich Police Chief Robert Danko remains on paid administrative leave". Despite previously reporting that the Plaintiff had pled guilty to disorderly conduct, article states that the Plaintiff pled guilty to unlawful imprisonment and harassment charges in December of 2024. This is false. 
28. On January 9, 2025, Defendant WNYT published a news story on their nightly broadcast wherein Defendant reporter Zach Richter reported that the Plaintiff pled guilty to unlawful imprisonment and harassment in December of 2024 and that he "is" accused of holding a woman against her will. This is false.29. On January 9. 2025. Defendant Mark Mulholland reported on air that the Cambridge Village Board was meeting to discuss making employee changes. This was false. Defendants previously requested and were provided the agenda for the village board meeting which did not include any mention of "employee changes" or the Plaintiff.30. On January 10, 2025, Defendant Chris Onorato states on air that the Plaintiff pled guilty to the original charges (unlawful imprisonment and harassment), despite Defendants previously reporting that the Plaintiff had pled guilty to disorderly conduct.31. Reports that the Plaintiff pled guilty to the original charges remained online until, on or about, January 29, 2025.32. On January 30, 2025, Defendants published a report stating that the Plaintiff "is accused of holding a woman he knew against her will." At the time of reporting, Plaintiff's charges were resolved with a conviction for disorderly conduct, making this report false.[FN9]
Plaintiff pled that the statements made constitute Libel per se and defamation.[FN10]
 Plaintiff also claims the statements were made with intent to inflict emotional distress.[FN11]

NATURE OF THE CRIMINAL CHARGES
The definitions of the underlying criminal charges are set forth below.
Penal Law § 135.00 provides, inter alia:
The following definitions are applicable to this article:
1. "Restrain" means to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful. A person is so moved or confined "without consent" when such is accomplished by (a) physical force, intimidation or deception, or (b) any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement.Penal Law § 135.05 defines unlawful imprisonment as follows:
A person is guilty of unlawful imprisonment in the second degree when he restrains another person.Unlawful imprisonment in the second degree is a class A misdemeanor.Penal Law § 240.26 defines harassment as follows:
A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or2. He or she follows a person in or about a public place or places; or3. He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.Subdivisions two and three of this section shall not apply to activities regulated by the national labor relations act, as amended, the railway labor act, as amended, or the federal [*3]employment labor management act, as amended.Harassment in the second degree is a violation.As aforementioned, Defendant admits he was charged with Unlawful imprisonment and Harassment, but claims he resolved same charges upon a plea of guilty to disorderly conduct in full satisfaction of the charges.
Penal Law § 240.26 defines disorderly conduct as follows:
A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:1. He engages in fighting or in violent, tumultuous or threatening behavior; or2. He makes unreasonable noise; or3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or5. He obstructs vehicular or pedestrian traffic; or6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.Disorderly conduct is a violation.Thus, under the foregoing provisions of the penal law, the scope of the charged unlawful conduct, as well as the disposition thereof, is very broad, and encompasses violence, abuse, and restraint. This Court notes, "a voluntary guilty plea is inconsistent with a claim of factual innocence. (See People v Tiger, 32 NY3d 91, 101 [2018]).
NEWS BROADCASTS
The record contains the underlying written news reports and broadcasts.
On July 10, 2024, Defendants reported the following:
"FIRST ON 13: New police chief in Washington County arrested.News Channel 13 has learned that Robert Danko, who was promoted last week to Chief of the Cambridge-Greenwich Police Department, was arrested by the Washington County sheriff on Wednesday night. Danko started with the police department 16 years ago and had been the sergeant in charge until he was sworn in as chief last week. He was arraigned in Washington County Centralized Arraignment Court. He is due in Salem Town Court on Monday at 5 p.m. Mayor Carman Bogle confirmed to NewsChannel 13 that he is not on patrol today."[FN12]
On July 11, 2024, Defendants broadcast the report from the preceding day.[FN13]
The record supports a finding that the report and broadcast were substantially accurate.
On July 12, 2024, Defendants reported the following:
Woman says arrested Cambridge-Greenwich police chief hurt her last monthNewsChannel 13 is speaking to the alleged victim following the arrest of a local police chief in Washington County. As reported First on 13, Robert Danko was arrested and charged with false imprisonment and harassment on Wednesday. He was arrested one week after being promoted to chief at the Cambridge-Greenwich Police Department. The alleged victim in this case is a woman Danko is familiar with. She does not want to be identified. There was an incident between the two of them last month, she told NewsChannel 13. NewsChannel 13 filed a records request with the Washington County Sheriff's Office, asking for a copy of that report. We are also requesting a copy of a separate statement this woman made to deputies on Wednesday. That is the same day Danko was arrested and charged. Once News Channel 13 hears back from the sheriff's office on those requests, we will let you know.[FN14]
It is manifest that the report of "false imprisonment" falls within the parameters of restraint as set forth above. On July 12, 2024, Defendants broadcast the same report, and for a period of seconds the unrelated incident report involving one Justin Danko was scrolling in the background of Anchor Rachael Tiede, albeit she did not cite the facts of the Justin Danko report.[FN15]
The record supports a finding that the report and broadcast were substantially accurate.
On July 14, 2024, Defendant reported the following:
A local police chief, who is now on paid administrative leave after his arrest, is due in court on Monday. NewsChannel13 was first to report that Robert Danko was arrested and charged with false imprisonment and harassment last Wednesday. He was arrested one week after being promoted to chief at the Cambridge-Greenwich Police Department. The alleged victim in this case is a woman who Chief Danko is familiar with. She spoke with News Channel 13 and she does not want to be identified. She tells us there was an incident between the two of them last month. We have filed a records request with the Washington County Sheriff's Office asking for a copy of that report. Weare also requesting a copy of a separate statement this woman made to deputies on Wednesday. That is the same day Danko was arrested and charged. Once we hear back from the Sheriff's Office on those requests, we will let you know. Meanwhile, Danko is due in court Monday night at 5 p.m.[FN16]
Same date, Defendants broadcast the same report.[FN17]
The record supports a finding that the report and broadcast were substantially accurate.
On December 16, 2024, defendant reported the following:
"Then Washington County police chief who was accused of unlawful imprisonment and harassment has admitted to a lesser charge. Cambridge-Greenwich Police Chief Robert Danko was arrested in June for allegedly holding a woman against her will. Danko pleaded guilty on Monday in Salem Town Court to disorderly conduct. Danko was also fined and an order of protection was put in place. Danko has been on leave from his position since his arrest and has been barred from owning guns. When News Channel 13 reached out to Cambridge Mayor Carman Bogle, she said she had no information about Danko's job status since the case was just resolved." [FN18](Emphasis added)
Same date, Defendants broadcast the same report.[FN19]
The record supports a finding that the report and broadcast were substantially accurate. The Court notes that the issuance of an order of protection under CPL § 530.12 (5) is consistent with allegations of violence and restraint.
On January 9, 2025, Defendant reported the following:
"The Village of Cambridge held its first board meeting since Cambridge-Greenwich Police Chief Robert Danko pleaded guilty to resolve a criminal case. Danko has made over $33,000 since being placed on administrative leave in July of 2024. Cambridge Mayor Carman Bogle tells News Channel 13 that Danko's employment status has not changed and that the board discussed Danko during the executive session. Mayor Bogle tells NewsChannel 13 "We're waiting for resolution of the current court action before we take action. And the once the legal process concludes the Village Board will discuss." Chief Danko was arrested and charged in July of 2024 for unlawful imprisonment and violation of harassment. He is accused of holding a woman he knew against her will back in June of 2024. Danko plead guilty to the lesser charge of disorderly conduct in December."[FN20](Emphasis added)
The record supports this report as substantially accurate. Same report was also the subject of two broadcasts on January 9, 2025. The first broadcast was accurate.[FN21]
In the second broadcast, defendant Zach Richter reported that plaintiff had been arrested and charged with unlawful imprisonment and harassment, and that plaintiff "pled guilty to these charges last month." [FN22]
While such report was not technically accurate, the record shows that plaintiff had pled guilty to disorderly conduct in full satisfaction of same charges. Accordingly, the Court finds the [*4]broadcast was substantially accurate.
On January 10, 2025, Defendant Onorato broadcast a report that plaintiff had been the subject of a harassment investigation (he did not specify the actual charges) and that he had pled guilty to these charges last month.[FN23]
The Court finds the broadcast was substantially accurate.
On January 30, 2025, Defendant reported the following:
"A Washington County police chief is still on the job more than six months after being charged in a domestic-related incident. Cambridge-Greenwich Police Chief Robert Danko is accused of holding a woman he knew against her will. Danko pleaded guilty last month to the lesser charge of disorderly conduct. As of Dec. 30, Danko had collected more than $33,000 in salary since his arrest, which is paid for by the village of Cambridge and Greenwich. NewsChannel 13 has obtained a copy of a risk protection order that was signed in July 2024, which prevents Danko from buying, possessing or carrying a gun until July 2025."[FN24]
The record supports this report as substantially accurate.
CPLR 3211 MOTION TO DISMISS [FN25]

Defendant moved to dismiss the Complaint pursuant to CPLR R 3211(a) (1) [documentary evidence] (7) [failure to state cause of action] and (g) [claim involves public petition and participation].
STATEMENT OF LAW
In the ordinary course, the CPLR R 3211 review standard requires that a Court "must give the pleadings a liberal construction, accept the allegations as true and accord the Petitioners every possible favorable inference" (Chanko v. Am. Broad Companies, Inc., 27 NY3d 46, 52 [2016]; see also, Conklin v Laxen, 180 AD3d 1358, 1362 [4th Dept. 2020]; Piller v Tribeca Dev. Group LLC, 156 AD3d 1257, 1261 [3d Dept. 2017]). In Wedgewood Care Ctr. v. Kravitz, 198 AD3d 124, 130 [2d Dept. 2021], the court held, 
On a motion to dismiss for failure to state a cause of action, the pleading is to be afforded a liberal construction. The facts alleged in the complaint must be accepted as true, and the plaintiff is entitled to receive the benefit of every possible favorable inference. Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery.However, allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration, nor [*5]to that arguendo advantage." (Internal quotations and citations omitted; emphasis added).(See also, Easterbrooks v. Schenectady County, 218 AD3d 969, 970 [3d Dept. 2023], where the Court held,
"However, the favorable treatment accorded to a plaintiff's complaint is not limitless and, as such, conclusory allegations — claims consisting of bare legal conclusions with no factual specificity — are insufficient to survive a motion to dismiss. Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss." (Internal quotations and citations are omitted; emphasis added)In addition to the foregoing, the review standard under CPLR 3211 (g), presents a heightened review standard, and must be considered in context of Civil Rights Law 76-a. 
CPLR 3211 (g) provides, inter alia:
(g) Stay of proceedings and standards for motions to dismiss in certain cases involving public petition and participation.1. A motion to dismiss based on paragraph seven of subdivision (a) of this section, in which the moving party has demonstrated that the action, claim, cross claim or counterclaim subject to the motion is an action involving public petition and participation as defined in paragraph (a) of subdivision one of section seventy-six-a of the civil rights law, shall be granted unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law. The court shall grant preference in the hearing of such motion. (Emphasis added)Civil Rights Law 76-a provides:
1. For purposes of this section:(a) An "action involving public petition and participation" is a claim based upon:(1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or(2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.(b) "Claim" includes any lawsuit, cause of action, cross-claim, counterclaim, or other judicial pleading or filing requesting relief.(c) "Communication" shall mean any statement, claim, allegation in a proceeding, decision, protest, writing, argument, contention or other expression.(d) "Public interest" shall be construed broadly, and shall mean any subject other than a purely private matter.2. In an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of [*6]whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.3. Nothing in this section shall be construed to limit any constitutional, statutory or common law protections of defendants to actions involving public petition and participation.In this Court's view, the challenged statements were made in furtherance of a TV news report that a police chief had been charged with a crime and thus constitute a "communication in a place open to the public or a public forum in connection with an issue of public interest," making this action an "action involving public petition and participation." (See Reeves v. Associated Newspapers, Ltd., 232 AD3d 10, 19-20 [1st Dept. 2024], where the Court held,
"In order to fulfill the anti-SLAPP law's stated purpose of protecting public petition and participation, the 2020 amendments provide that public interest shall be broadly construed to embrace matters of political, social, or other concern to the community. Manifestly, this includes allegations of domestic violence, as reported in the online article. Matters of public interest also include judicial proceedings and allegations of criminal conduct, which are likewise referenced in the news story." (Emphasis added; internal quotations and citations omitted) As a result, the substantial basis standard applies (See InkMango, Inc. v. Warren, 2025 NY App. Div. LEXIS 6444, p. 6 [1st Dept. 2025] where the Court held,
"Supreme Court properly found that plaintiff's defamation claims involve "public petition and participation" so as to fall within the anti-SLAPP law (Civil Rights Law § 76-a[1]), triggering the "substantial basis" standard for dismissal under CPLR 3211(g). This standard requires plaintiff to sustain a heightened burden of demonstrating that its defamation claims have a substantial basis in law. As a result, plaintiff must establish by clear and convincing evidence that the relevant communication was made with knowledge of its falsity or with reckless disregard of whether it was false (Civil Rights Law § 76-a)." (Case citations omitted)(See also, Phipps v. Kuonen, 2025 NY App. Div. LEXIS 5327, p. 6 [2nd Dept. 2025]) where the Court held,
"The plaintiff's failure to meet the CPLR 3211(a)(7) standard necessarily establishes her failure to meet the higher CPLR 3211(g) standard, required by the anti-SLAPP law because she failed to demonstrate that the causes of action to recover damages for defamation and private nuisance had a "substantial basis in law." Stated another way, the issue distills to whether Plaintiff has alleged sufficient facts to establish a substantial basis to support a claim which provides a right of recovery. He has not!
DEFAMATION
As a matter of pleading, CPLR 3016 (a) requires Plaintiff to plead the exact words complained of and "the time, place and manner of the allegedly false statements and specify to [*7]whom such statements were made" (See Sibley v. Meridian Wildlife Servs., LLC, 2025 NY Slip Op 00011 [3d Dept. 2025]; Jackie's Enters., Inc. v Belleville, 163 AD3d 1567 [3d Dept. 2018]). In Halpin v. Banks, 231 AD3d 1337, 1339-1340 [3d Dept. 2024] the Court identified the elements of a defamation cause of action as follows:
"A claim of defamation requires proof that the defendant made a false statement, published that statement to a third party without privilege, with fault measured by at least a negligence standard, and the statement caused special damages or constituted defamation per se. It is for the court to decide whether the statements complained of are reasonably susceptible of a defamatory connotation, thus warranting submission of the issue to the trier of fact. This determination is made by looking at the context and circumstances surrounding the entire communication." (Emphasis added; internal quotations and citations omitted)In Liberman v. Gelstein, 80 NY2d 429, 435 [1992], the Court identified the elements of defamation per se, listing four (4) distinct exceptions:
"The four established exceptions (collectively "slander per se") consist of statements (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." (Internal citations omitted; emphasis added)If defamation per se is established, "the law presumes that damages will result, and special damages need not be alleged or proven." (See Kasavana v Vela, 172 AD3d 1042, 1046 [2d Dept. 2019]). 
Distinct from a determination of whether the statements arise to the level of defamation in the first instance, resolution of this motion turns on whether the defendants are entitled to an absolute privilege under Civil Rights Law § 74. They are!
Civil Rights Law § 74 provides:
"A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof." (Emphasis added)In essence, Plaintiff acknowledges he was arrested, prosecuted on criminal charges [unlawful imprisonment and harassment], and that he pled guilty to Disorderly Condict, in satisfaction of those charges. Plaintiff claims the reporting was misleading, and inaccurate as to the scope and disposition of the charges. Plaintiff also claims defendant displayed a complaint filed against [*8]one Justin Danko, not plaintiff, in the backdrop of a news story about the Plaintiff.[FN26]
While the complaint against Justin Danko was displayed in the background for several seconds, the news Anchor accurately reported that Plaintiff had been arrested and charged with unlawful imprisonment and harassment by a woman he was familiar with, and the Anchor did not recite the specific language of the complaint against Justin Danko.
In this Court's view, the news reports were substantially accurate, fair and true (See Alf v. Buffalo News, Inc., 21 NY3d 988, 990 [2013], where the Court held,
"When determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision. Here, the News provided substantially accurate reporting of the plea agreement and the fines and restitution, as discussed in open court. Thus, all the challenged statements concerning NAC and plaintiff relating to these proceedings are entitled to immunity under Civil Rights Law 74." (Emphasis added; internal quotations and citations omitted)(See Also, Reeves v. Associated Newspapers, Ltd., 217 AD3d 550, 551 [1st Dept. 2023], where the court held,
"Here, defendants' article provided a substantially accurate reporting of Reeves's arrests for domestic violence and related criminal proceedings, and the defamation action brought by Reeves against Michelle and others, during the divorce and custody proceedings. The minor inaccuracies in the article did not deprive it of the protection of the fair reporting privilege." (Emphasis added; internal quotations and citations omitted)Here, there is no reasoned view of the documented reports and broadcasts, that defendants reported the subject incident with knowledge of falsity or with reckless disregard of whether it was false. While plaintiff quibbles, the reporting was substantially accurate, fair and true. As such, defendants are entitled to immunity pursuant to Civil Rights Law § 74.
It is the determination of the Court that Plaintiff failed to meet its burden to show that his cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law. Thus, dismissal under CPLR 3211 (g) is warranted.
Since the intentional infliction of emotional distress cause of action is duplicative of the defamation claims, barred by the privilege, those claims, too, must be dismissed. (Reeves v. Associated Newspapers, Ltd., supra. at p. 551). Of course, since plaintiff has not demonstrated a likelihood of success on the merits, he is not entitled to injunctive relief.
ATTORNEY FEES
Defendants seek an award of attorney fees upon dismissal of this action. Civil Rights Law 70-a provides, inter alia:
[*9]1. A defendant in an action involving public petition and participation, as defined in paragraph (a) of subdivision one of section seventy-six-a of this article, may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that:(a) costs and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules, that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law . . . (Emphasis added)
Where, as here, defendant has prevailed on its CPLR 3211 motion, the award of attorney fees is mandatory (See Reeves v. Associated Newspapers, Ltd., supra. at 25).
CONCLUSIONFor the reasons more fully stated above, Defendants motion to dismiss the Complaint is granted, and the Complaint is dismissed, and it is further, 
ORERED, ADJUDGED AND DECREED, that defendants are awarded attorney fees in accord with Civil Rights Law 70-a.[FN27]

This memorandum constitutes the decision and order of the Court.
Dated: January 5, 2026Albany, New YorkPETER A. LYNCH, J.S.C.

Footnotes

Footnote 1:NYSCEF Doc. No. 3 — Amended Verified Complaint.

Footnote 2:NYSCEF Doc. No. 3 — Amended Verified Complaint ¶ 3.

Footnote 3:NYSCEF Doc. No. 3 — Amended Verified Complaint ¶ 4.

Footnote 4:NYSCEF Doc. No. 54 — Danko affidavit ¶ 3.

Footnote 5:NYSCEF Doc. No. 54 — Danko affidavit ¶ 5 and 6; NYSCEF Doc. No. 56 — Slater Affidavit. 

Footnote 6:NYSCEF Doc. No. 54 — Danko affidavit ¶ 9.

Footnote 7:NYSCEF Doc. No. 54 — Danko affidavit ¶ 7, 8. And 10.

Footnote 8:NYSCEF Doc. No. 3 — Amended Verified Complaint ¶ 4.
Footnote 9:NYSCEF Doc. No. 3 — Amended Verified Complaint ¶ 23-32.

Footnote 10:NYSCEF Doc. No. 3 — Amended Verified Complaint ¶ 34-48.

Footnote 11:NYSCEF Doc. No. 3 — Amended Verified Complaint ¶ 49-55.

Footnote 12:NYSCEF Doc. No. 8.

Footnote 13:NYSCEF Doc. No. 9 — Exhibit "3"- July 11, 2024, Broadcast.

Footnote 14:NYSCEF Doc. No. 11.

Footnote 15:NYSCEF Doc. 10 — Exhibit "4"- July 12, 2024, Broadcast.

Footnote 16:NYSCEF Doc. No. 13.

Footnote 17:NYSCEF Doc. 12— Exhibit "6"- July 14, 2024, Broadcast.

Footnote 18:NYSCEF Doc. No. 15 and 16.

Footnote 19:NYSCEF Doc. 14— Exhibit "8"- December 16, 2024, Broadcast

Footnote 20:NYSCEF doc. No. 18.

Footnote 21:NYSCEF Doc. 16— Exhibit "10"- January 9, 2025, Broadcast

Footnote 22:NYSCEF Doc. 17— Exhibit "11"- January 9, 2025, Broadcast

Footnote 23:NYSCEF Doc. 19— Exhibit "13"- January 10, 2025, Broadcast

Footnote 24:NYSCEF Doc. No. 20.

Footnote 25:NYSCEF Doc. No. 5.

Footnote 26:NYSCEF Doc. No 31 and 64 - Exhibit "D" — video on thumb drive. The document reference to Justin Danko was discernable from the subject matter — See NYSCEF Doc. No. 63.

Footnote 27:Petitioner is directed to submit its attorney fee application on notice to Respondent.