■ TROY NURSING & REHABILITATION CENTER, LLC, Doing Business as THE SPRINGS NURSING & REHABILITATION CENTRE, Respondent, v ERNEST NAYLOR, Defendant, and DIANA GAETANO, Individually and as Responsible Party and Attorney-in-Fact for ERNEST NAYLOR, Appellant. [944 NYS2d 323]—

Spain, J. Appeals (1) from an order of the Supreme Court (Hummel, J.), entered March 24, 2011 in Rensselaer County, which, among other things, granted plaintiff's motion for summary judgment, and (2) from the judgment entered thereon.

In this action to collect fees due plaintiff for nursing home care rendered to defendant Ernest Naylor, now deceased (hereinafter decedent), at plaintiff's Springs Nursing & Rehabilitation Centre in the City of Troy, Rensselaer County, Supreme Court awarded summary judgment to plaintiff on its account stated and breach of contract causes of action, holding decedent's daughter, defendant Diana Gaetano (hereinafter defendant) personally liable to plaintiff for failing to use her access to decedent's property to pay his nursing home bills. Since suffering a massive stroke in December 2005 until his death in October 2008, decedent was a full-time resident of the Springs, except for periods of hospitalization. On two occasions when decedent was readmitted to the Springs after spending time in the hospital, defendant executed agreements with plaintiff in which she promised to utilize her access to decedent's assets—by virtue of her power of attorney—to pay for his care.* Defendant also agreed to pay damages to plaintiff for any breach of that obligation. Defendant now appeals from Supreme Court's order and judgment holding her personally liable to plaintiff for $80,509.55, plus interest, reflecting the unpaid balance due to plaintiff for decedent's care at the time of his death.

Decedent died soon after the commencement of this action and prior to Supreme Court's issuance of the judgment on appeal, yet no estate representative has been substituted for decedent. As we find that decedent's estate is a necessary party to this action, we must modify Supreme Court's judgment and remit the matter for further proceedings (see Sorbello v Birchez Assoc., LLC, 61 AD3d 1225, 1226 [2009]; Matter of Romeo v New York State Dept. of Educ., 41 AD3d 1102, 1104-1105 [2007]). Indeed, as the account stated cause of action necessitates an assessment of the debt owned to plaintiff by the estate (see Jim-Mar Corp. v Aquatic Constr., 195 AD2d 868, 869-870 [1993], lv denied 82 NY2d 660 [1993]), we find that summary judgment on that issue cannot be awarded without the estate's participation.

We do, however, reach the issue of defendant's personal liability for breach of contract and conclude that Supreme Court correctly held that defendant accepted personal responsibility to utilize her access to decedent's funds to pay for his care and

---

* At a minimum, decedent's assets included two New York properties, six undeveloped lots in Florida, three savings accounts, one checking account, various stocks and two motor vehicles. During his lifetime, he also received monthly Social Security and pension benefits. Prior to his permanent admission at the Springs, decedent created an irrevocable trust by which he transferred his residence by deed to defendant as trustee of a newly created Naylor Family Trust.

then breached that agreement by failing to apply available assets to pay decedent's nursing home bills. In so holding, we reject defendant's assertions that the agreements that she executed to secure decedent's residency at plaintiff's facility violate the Federal Nursing Home Reform Act. Although that act prohibits a nursing facility from "requir[ing] a third party guarantee of payment to the facility as a condition of [a resident's] admission" (42 USC § 1396r [c] [5] [A] [ii]; *see also* 10 NYCRR 415.3 [b] [1]), it also expressly permits a nursing facility to "requir[e] an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care" (42 USC § 1396r [c] [5] [B] [ii]; *see also* 10 NYCRR 415.3 [b] [6]). The agreements in question here clearly fall into the latter category (*see generally Putnam Nursing & Rehabilitation Ctr. v Bowles*, 239 AD2d 479, 481 [1997]).

Further, we reject defendant's contention that one of the two agreements she signed cannot be enforced against her in her personal capacity because she executed the agreement with the letters "POA" following her signature. The agreement's clear terms define defendant's obligations as the responsible party by means of her control over decedent's assets, leaving no room to suggest that the document was signed on decedent's behalf. Indeed, defendant did not sign the agreement on the line reserved for the "SIGNATURE OR MARK OF RESIDENT" but on the line expressly reserved for the "SIGNATURE OF RESPONSIBLE PARTY." As defendant's claims that the agreements were the product of fraud or are otherwise invalid are wholly unsupported, no issues of fact preclude a finding that plaintiff was obligated to use her authority to access decedent's property to pay his debts to plaintiff.

Likewise, the record is replete with evidence of defendant's breach of her agreement to use decedent's funds to pay his debts to plaintiff. Specifically, we concur with Supreme Court's conclusion that defendant's spending of decedent's monthly income for upkeep of the residential property held in the Naylor Family Trust—property where decedent clearly would never again reside—including not only paying the mortgage and taxes, but also such things as maintaining telephone and cable television service, lawn service, housecleaning, newspaper delivery, birdseed, garbage collection and structural repairs, clearly violated her agreement to utilize decedent's funds to pay his debts to plaintiff. Defendant's argument that she was obligated to maintain the home in accordance with her duties under the

trust is belied by the clear terms of the trust document. Decedent's income was not part of the trust—its sole asset was the single, non-income producing residential real property—and, although decedent retained a right to reside on the property, neither he, nor defendant as trustee, carried an obligation to maintain it with his other resources should he cease to reside there. Supreme Court properly rejected, as a matter of law, defendant's attempt to establish that decedent continued to use the property as a residence by virtue of defendant taking him and his wife—defendant's mother who was also a resident of plaintiff's nursing home—to the house to visit for a few hours at a time.

Further, defendant admitted that she refused to use an undisclosed amount of decedent's savings to pay his bills and that, instead of paying plaintiff, she used decedent's income to pay ongoing living expenses for both of her parents, including, among other things, magazine subscriptions, automobile insurance and maintenance (although her parents could no longer drive), gifts to family members and charitable donations. Given defendant's contractual obligation to utilize decedent's resources to pay his debt to plaintiff, this admitted spending of his income and refusal to utilize his other available resources to pay his bills was clearly a breach of her agreements with plaintiff.

We cannot at this juncture, however, affirm the damage award assessed against defendant for her breach of contract because insufficient evidence exists to determine, as a matter of law and without representation by decedent's estate, the extent that liability might be limited by the amount of assets available to defendant, which decedent held prior to his death. Although we have found that defendant was obligated to utilize decedent's income to satisfy his obligation to plaintiff rather than for maintenance of the trust property, his income appears to have been insufficient to meet his financial obligation to the Springs. Supreme Court calculated his income for a two-year period to be approximately $45,000. Further, defendant asserts that she was unable to sell decedent's Florida property and that proceeds she received from selling decedent's stocks had already been remitted to the Springs. The record does not contain the value of the bank accounts that defendant controlled prior to decedent's death or the value of his other property. Accordingly, factual issues exist precluding summary judgment on the amount of defendant's liability. Given that the matter must be remitted to Supreme Court for substitution of a representative of decedent's estate, we leave it to that court to reassess the proper amount of damages after further discovery or a trial.

Mercure, J.P., Lahtinen, McCarthy and Garry, JJ., concur. Ordered that the order and judgment are modified, on the law, without costs, by reversing so much thereof as granted plaintiff's motion for summary judgment on the account stated cause of action and awarded damages to plaintiff; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.