Nassau Operating Co., LLC v DeSimone (2022 NY Slip Op 04029)

Nassau Operating Co., LLC v DeSimone

2022 NY Slip Op 04029

Decided on June 22, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 22, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
ANGELA G. IANNACCI
ROBERT J. MILLER
JOSEPH A. ZAYAS, JJ.

2021-00243
 (Index No. 606237/19)

[*1]Nassau Operating Co., LLC, etc., respondent,
v
Sabrina DeSimone, appellant.

McAndrew, Conboy & Prisco, LLP, Melville, NY (Michael J. Prisco of counsel), for appellant.
Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, White Plains, NY (Robert A. Spolzino and David A. House of counsel), for respondent.

DECISION & ORDER
In an action to recover damages for breach of contract, the defendant appeals from an order of the Supreme Court, Nassau County (Denise L. Sher, J.), entered December 21, 2020. The order, insofar as appealed from, denied those branches of the defendant's motion which were to vacate a judgment of the same court dated July 8, 2020, which, upon an order of the same court entered June 16, 2020, granting the plaintiff's motion for leave to enter a default judgment upon the defendant's failure to appear or answer the complaint, is in favor of the plaintiff and against the defendant in the total sum of $112,791.56, and, thereupon, pursuant to CPLR 5015(d) for restitution of certain funds seized from the defendant's bank account to satisfy the judgment dated July 8, 2020, and pursuant to CPLR 3211(a) to dismiss the complaint.
ORDERED that the order entered December 21, 2020, is reversed, on the law and in the exercise of discretion, with costs, those branches of the defendant's motion which were to vacate the judgment dated July 8, 2020, and, thereupon, pursuant to CPLR 5015(d) for restitution of funds seized from the defendant's bank account, and pursuant to CPLR 3211(a) to dismiss the complaint, are granted, the judgment dated July 8, 2020, and the order entered June 16, 2020, are vacated, and the complaint is dismissed.
The plaintiff is a limited liability company engaged in the business of providing skilled nursing home care services at a certain facility located in Hempstead. The plaintiff alleged that Sebastian Puleo (hereinafter the resident) received room, board, and skilled nursing care at that facility beginning on February 23, 2018.
By order to show cause dated May 28, 2019, the administrator of the plaintiff's facility, Jacob Zimberg (hereinafter the plaintiff's administrator), commenced a special proceeding pursuant to Mental Hygiene Law article 81 to have a guardian of the property appointed for the resident on the ground that he was incapacitated (hereinafter the guardianship proceeding). The resident's granddaughter, Sabrina DeSimone (hereinafter the granddaughter), was notified of the guardianship proceeding.
The petition in the guardianship proceeding requested that the guardian be authorized to exercise certain property management powers, including the authority to apply the resident's "income and resources . . . toward any prior outstanding medical and/or nursing home bills not covered by Medicaid and NAMI debt," and the power to "[h]andle all real estate transactions in connection with the premises 1755 Lenox Avenue, East Meadow, New York, including but not limited to eviction proceedings if necessary, and the sale of said premises."
The Supreme Court in the guardianship proceeding appointed a court evaluator. The court evaluator noted, inter alia, that the resident "was denied Medicaid, due to the value of his assets." The court evaluator determined that the resident's "main asset [was] his home, which [was] currently under contract." The court evaluator reported that "[a] closing date [was] expected soon."
On June 5, 2018, the resident executed a certain power of attorney which granted the granddaughter the authority to, among other things, engage in real estate transactions, banking transactions, and health care billing and payment matters on the resident's behalf.
On July 23, 2019, in the guardianship proceeding, the Supreme Court determined, inter alia, that the 92-year-old resident had "certain functional limitations which impair[ed] his ability to manage his own property needs" and that "he may suffer harm and danger if a guardian is not appointed on his behalf." The court stated that it would appoint a guardian with the powers requested in the petition. The court stated that "[t]he power of attorney shall remain in effect until the independent guardian is commissioned."
In August 2019, before a judgment was rendered in the guardianship proceeding, the plaintiff served the granddaughter with the complaint in this breach of contract action, naming the granddaughter as the only defendant. The complaint asserted one cause of action. It alleged that the granddaughter had signed the resident's admissions agreement on February 23, 2018, which thereby obligated her "to remit payment from the Resident's funds and/or secure payment from third[-]party payors to meet the Resident's obligations to the [p]laintiff." The complaint continued: "By reason of the [granddaughter's] default and breach of the [admissions agreement], [the plaintiff] has suffered damages in the sum of $109,875.00 through February 28, 2019, which sum continues to accrue."
Although the complaint was dated March 19, 2019, it was not verified by the plaintiff's administrator until April 17, 2019. The complaint was not served on the granddaughter until August 12, 2019, and the affidavit of service was filed with the court on August 20, 2019. When the granddaughter failed to appear or answer the complaint within the required statutory period, the plaintiff served her with notice of the default (see CPLR 3215[g]), on or about October 3, 2019.
On October 9, 2019, the Supreme Court in the guardianship proceeding rendered judgment. The judgment granted the petition and appointed a guardian of the property for the resident. As relevant here, the judgment provided that the granddaughter, "as attorney[ ]-in-fact under the [p]ower of [a]ttorney dated June 15, 2018, [was] authorized to proceed with the sale of premises 1755 Lenox Avenue, East Meadow, New York, and the proceeds of the sale [were] to be turned over to the Guardian." However, the court directed that the power of attorney would only remain in effect until the guardian was commissioned, at which time "the Power of Attorney shall be vacated." As requested by the plaintiff's administrator, the judgment gave the guardian the authority to apply the resident's "income and resources . . . toward any prior outstanding medical and/or nursing home bills not covered by Medicaid and NAMI debt," and the power to "[h]andle all real estate transactions in connection with the premises 1755 Lenox Avenue, East Meadow, New York, including but not limited to eviction proceedings if necessary, and the sale of said premises."
The resident died on April 14, 2020. By notice of motion dated May 5, 2020, the plaintiff moved for leave to enter a default judgment against the granddaughter in this breach of contract action. The plaintiff asserted that the granddaughter "was appointed [sic] the Resident's Power of Attorney," that the resident lived at the plaintiff's facility from February 23, 2018, until [*2]April 14, 2020, and that the resident died with an unpaid balance of $99,350. The plaintiff alleged that the resident's outstanding balance was not $109,875, as alleged in the complaint, because on June 6, 2019, the resident had been approved for Medicaid coverage, retroactive to February 1, 2019. The plaintiff specified that "[the plaintiff's] damages . . . are solely for the private charges through January 31, 2019, i.e. prior to the Resident's Medicaid coverage." The plaintiff alleged that the granddaughter was personally liable for the resident's bill for this period because the granddaughter breached the admissions agreement by failing to "timely document and secure Medicaid benefits," and by failing to use the resident's assets to pay the resident's outstanding bill.
The plaintiff's motion was granted in an order entered June 16, 2020. A judgment dated July 8, 2020, was subsequently entered, upon the order entered June 16, 2020, in favor of the plaintiff and against the granddaughter in the principal sum of $99,350, plus interest and costs. The total amount of the judgment was $112,791.56.
After the judgment was entered, the plaintiff seized funds from the granddaughter's personal Bank of America account to satisfy it. The granddaughter subsequently moved to vacate the judgment dated July 8, 2020, which had been entered upon her default. She contended that the Supreme Court had the power to vacate her default pursuant to CPLR 5015(a)(1) and pursuant to the court's "inherent" discretionary authority. She also moved pursuant to CPLR 5015(d) for restitution of the funds that had been seized from her personal bank account to satisfy the judgment dated July 8, 2020, and pursuant to CPLR 3211(a)(7) to dismiss the complaint for failure to state a cause of action.
The granddaughter contended that she was 26 years old, and that she resided with her father in Wantagh, where she cared for him. At the time that the resident (her grandfather) was admitted to the plaintiff's facility, his only asset was his residence at 1755 Lennox Avenue, East Meadow, New York (hereinafter the resident's home). The granddaughter retained a certain law firm in May 2018, which agreed to render elder law planning services to the resident with the understanding that its fee would be paid out of the proceeds of the sale of the resident's home. The law firm prepared the power of attorney which had been executed by the resident in June 2018, and the granddaughter outlined the steps she subsequently undertook to effectuate the sale of the resident's home in the summer of 2018. Although the granddaughter entered into a contract of sale with a prospective purchaser, the sale was eventually cancelled by the purchaser due to the length of time it took to evict a certain holdover tenant (the resident's son) from the premises. As a result of the delay, the law firm terminated its representation on August 3, 2018.
The granddaughter noted that the plaintiff did not allege that she had access to, or control over, any asset that belonged to the resident's estate, or that she otherwise depleted, commingled, or transferred any of the resident's assets at any time. The granddaughter contended that it was illegal under state and federal law to hold her personally liable for the resident's outstanding bill under the circumstances alleged by the plaintiff, and that the complaint failed to state a valid cause of action.
The plaintiff opposed the granddaughter's motion. The plaintiff's attorney, in opposition, acknowledged that the plaintiff was not contending that the granddaughter took possession of, or depleted the resident's assets; the plaintiff's sole cause of action was to recover damages for breach of the admissions agreement as set forth in its motion for leave to enter a default judgment.
In the order appealed from, the Supreme Court, among other things, denied those branches of the defendant's motion which were to vacate the default judgment, and, thereupon, for restitution pursuant to CPLR 5015(d), and pursuant to CPLR 3211(a)(7) to dismiss the complaint for failure to state a cause of action. The court determined that the granddaughter failed to demonstrate a reasonable excuse for her default, and that, in light of that determination, it did not need to consider any of the other issues that were raised by the granddaughter. The granddaughter appeals. We reverse the order insofar as appealed from.
"A party seeking to vacate a default pursuant to CPLR 5015(a)(1) must demonstrate a reasonable excuse for [their] delay in appearing and answering the complaint and a potentially meritorious defense to the action" (Wells Fargo Bank, N.A. v Mazzara, 124 AD3d 875, 875; see Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co., 67 NY2d 138, 141; Wells Fargo Bank, NA v Besemer, 131 AD3d 1047, 1049). "The determination of what constitutes a reasonable excuse for a default lies within the sound discretion of the Supreme Court" (Star Indus., Inc. v Innovative Beverages, Inc., 55 AD3d 903, 904).
Under the particular circumstances here, including the plaintiff's simultaneous prosecution of this action and the parallel guardianship proceeding, we conclude that the granddaughter established a reasonable excuse for her default (see generally Bank of N.Y. Mellon v Marolda, 139 AD3d 774). Furthermore, as set forth in more detail below, she demonstrated a meritorious defense to this action (see CPLR 3211[a][7]). Accordingly, we need not determine whether the Supreme Court should have exercised its "inherent" discretionary authority to vacate her default in the interest of justice (see Ladd v Stevenson, 112 NY 325, 332; Michaud v Loblaws, Inc., 36 AD2d 1013, 1014; see also Rukeyser v Richardson, 43 AD3d 815, 815; Luna Baking Co. v Myerwold, 69 AD2d 832; see generally 9 Carmody-Wait 2d § 63:262). Under the circumstances, the court should have granted that branch of the granddaughter's motion which was to vacate the judgment dated July 8, 2020 (see CPLR 5015[a][1]). Accordingly, we vacate the judgment dated July 8, 2020, and the order entered June 16, 2020 (see generally Matter of Exxon Mobil Corp. v New York City Dept. of Envtl. Protection, 178 AD3d 696, 697).
"Where a judgment or order is set aside or vacated, the court may direct and enforce restitution in like manner and subject to the same conditions as where a judgment is reversed or modified on appeal" (CPLR 5015[d]; see id. § 5523; Haye v Green, 78 AD3d 892, 894). "CPLR 5015(d) 'empowers a court that has set aside a judgment or order to restore the parties to the position they were in prior to its rendition, consistent with the court's general equitable powers'" (Gaisi v Gaisi, 108 AD3d 687, 688, quoting 10 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 5015.18). Under the circumstances here, the Supreme Court should have granted that branch of the granddaughter's motion which was pursuant to CPLR 5015(d) for restitution of the funds seized from her personal bank account to satisfy the judgment dated July 8, 2020 (see id.; § 5523; Gaisi v Gaisi, 108 AD3d at 688).
The Supreme Court also should have granted that branch of the granddaughter's motion which was pursuant to CPLR 3211(a)(7) to dismiss the complaint for failure to state a cause of action (see id.; see generally Matter of Exxon Mobil Corp. v New York City Dept. of Envtl. Protection, 178 AD3d at 700). On a motion to dismiss for failure to state a cause of action, "the pleading is to be afforded a liberal construction" (Leon v Martinez, 84 NY2d 83, 87, citing CPLR 3026). The facts alleged in the complaint must be accepted as true, and the plaintiff is entitled to receive the benefit "of every possible favorable inference" (Leon v Martinez, 84 NY2d at 87). "Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 142; see Myers v Schneiderman, 30 NY3d 1, 11).
However, "allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration, nor to that arguendo advantage" (Maas v Cornell Univ., 94 NY2d 87, 91 [internal quotation marks omitted]; see Simkin v Blank, 19 NY3d 46, 52). In addition, where, as here, evidentiary material is considered in connection with a motion to dismiss for failure to state a cause of action, dismissal should not eventuate "unless it has been shown that a material fact as claimed by the pleader . . . is not a fact at all and unless it can be said that no significant dispute exists regarding it" (Guggenheimer v Ginzburg, 43 NY2d 268, 275; see Rabos v R & R Bagels & Bakery, Inc., 100 AD3d 849, 851-852).
Here, the complaint asserted one cause of action, sounding in breach of contract. The essential elements of a cause of action to recover damages for breach of contract are (1) the existence of an enforceable contract, (2) the plaintiff's performance pursuant to that contract, (3) the [*3]defendant's breach of the contract, and (4) damages resulting from that breach (see Hausen v North Fork Radiology, P.C., 171 AD3d 888, 892; De Guaman v American Hope Group, 163 AD3d 915, 917; Elisa Dreier Reporting Corp. v Global NAPs Networks, Inc., 84 AD3d 122, 127).
The parties do not dispute that the admission agreement in this case is subject to the Nursing Home Reform Act (hereinafter the NHRA). As relevant here, the NHRA provides that "[w]ith respect to admissions practices, a nursing facility must . . . not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility" (42 USC § 1396r[c][5][A][ii]; see 42 CFR 483.15[a][3]; see also 10 NYCRR 415.3[b][1]). However, that prohibition "shall not be construed as preventing a facility from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care" (42 USC § 1396r[c][5][B][ii]; see 42 CFR 483.15[a][3]; see also 10 NYCRR 415.3[b][6]).
The granddaughter contends that she cannot be held personally liable for the resident's outstanding bill under the circumstances alleged by the plaintiff, and that the complaint should be dismissed for failure to state a valid cause of action. On this record, we need not determine whether the complaint alone adequately alleged the existence of an enforceable agreement. Where, as here, the parties' agreement is before the court in a breach of contract action, "its provisions establish the rights of the parties and prevail over conclusory allegations of the complaint" (805 Third Ave. Co. v M.W. Realty Assoc., 58 NY2d 447, 451). Indeed, "the interpretation of an unambiguous contract is a question of law for the court" (Ark Bryant Park Corp. v Bryant Park Restoration Corp., 285 AD2d 143, 150; see Wedgewood Care Ctr., Inc. v Kravitz, 198 AD3d 124, 132).
The admissions agreement set forth the relevant contractual obligations of the granddaughter, and the admissions agreement demonstrates as a matter of law that it did not render the granddaughter a "third party guarantee of payment" (42 USC § 1396r[c][5][A][ii]; see Wedgewood Care Ctr., Inc. v Kravitz, 198 AD3d at 132-133; cf. Knight v John Knox Manor, Inc., 92 So 3d 111, 118-119 [Ala Civ App]). "The admission[s] agreement merely required the [granddaughter] to facilitate payment from the . . . resident's available income and resources, and only to the extent that the [granddaughter] had access to such income and resources and only if [the granddaughter] could do so without incurring any personal financial liability" (Wedgewood Care Ctr., Inc. v Kravitz, 198 AD3d at 133).
Although the admissions agreement did not constitute "a third party guarantee of payment" (42 USC § 1396r[c][5][A][ii]; see 42 CFR 483.15[a][3]; see also 10 NYCRR 415.3[b][1]), the plaintiff failed to adequately allege a breach of its cited provisions. The plaintiff alleged that the granddaughter was granted legal control over the resident's home during a certain period of time after she executed the admissions agreement. However, the plaintiff failed to adequately allege that this resource was "available to pay for care in the facility" during the period that the defendant exercised such control (42 USC § 1396r[c][5][B][ii]), and that she could have facilitated payment from that resource during that time "without incurring [any] personal financial liability" (id.; see 42 CFR 483.15[a][3]; see also 10 NYCRR 415.3[b][6]). The plaintiff's contention that the granddaughter breached the admissions agreement by failing to effectuate the sale of the resident's home during the period that she retained control is without merit. The plaintiff did not allege that the granddaughter depleted, commingled, utilized, or transferred any of the resident's income or resources at any time. The plaintiff also did not allege that the granddaughter exercised any authority or control over the resident's income or resources after his death, or that she had access to, or control over, any income or resource belonging to the resident's estate. In light of the foregoing, the plaintiff failed to adequately allege a breach of the granddaughter's contractual obligation to facilitate payment to the plaintiff from the resident's "income or resources" (42 USC § 1396r[c][5][B][ii]; see 42 CFR 483.15[a][3]; 10 NYCRR 415.3[b][6]; see also Wedgewood Care Ctr., Inc. v Kravitz, 198 AD3d at 141; see generally Eades v Kennedy, PC Law Offs., 799 F3d 161, 171 [2d Cir]; cf. Sunshine Care Corp. v Warrick, 100 AD3d 981, 982; Troy Nursing & Rehabilitation Ctr., LLC v Naylor, 94 AD3d 1353, 1356; Putnam Nursing & Rehabilitation Ctr. v Bowles, 239 AD2d 479, 480-481).
The plaintiff's alternative theory of liability was that the granddaughter breached the admissions agreement by failing to "timely document and secure Medicaid payments." However, as the granddaughter correctly contends, the admissions agreement in this case did not render her a third-party guarantee of payment, or make her strictly liable for any interruption or gap in Medicaid coverage. Nor did it give the plaintiff the right to seek liquidated damages. Rather, the admissions agreement stated that the granddaughter would "be held personally responsible and liable if his/her actions or omissions have caused and/or contributed to non-payment of the [plaintiff's] fees" (emphasis added). Accordingly, the admissions agreement expressly limited the scope of the granddaughter's liability to circumstances where her own breach of the agreement constituted a proximate cause of the plaintiff's damages (see Wedgewood Care Ctr., Inc. v Kravitz, 198 AD3d at 142).
The plaintiff failed to adequately allege that the granddaughter's alleged failure to provide documentation or information constituted a proximate cause of the nonpayment of the resident's bill. The evidence submitted by the plaintiff demonstrated that the resident's December 1, 2018 application for Medicaid benefits was denied because his resources, which consisted almost entirely of his home, exceeded the allowable limit. Although the plaintiff asserted that a subsequent application for Medicaid benefits was denied due to the granddaughter's failure to provide requested information, the information requested in the denial letter related to the "[p]roceeds from the sale of . . . 1755 Lennox Ave East Meadow, NY 11554 " including a "[c]opy of the settlement statement from the closing." Since it is undisputed that the resident's home had not been sold at the time that the second Medicaid application was denied on April 9, 2019, those documents could not have been within the granddaughter's "possession or control" prior to that time (id. at 138; cf. Coleman v New Amsterdam Cas. Co., 247 NY 271, 276; DeLuca v RLI Ins. Co., 187 AD3d 709, 712-713), and any contention that the resident's second Medicaid application would have been approved notwithstanding the absence of any change in the resident's resource level is speculative. The evidentiary material submitted in connection with the granddaughter's motion, which included the Medicaid denial letters dated December 1, 2018, and April 9, 2019, conclusively established that the plaintiff's allegation that the granddaughter breached her obligation to provide documents and information which caused or contributed to the denial of the resident's Medicaid applications "was not a fact at all" (Kastin v GEICO Gen. Ins. Co., 190 AD3d 710, 712; see McKee v McKee, 171 AD3d 909, 911; Basile v Wiggs, 98 AD3d 640, 641; Grant v Aurora Loan Servs., 88 AD3d 949, 950; Prudential-Bache Metal Co., Inc. v Binder, 121 AD2d 923, 926; see also Wedgewood Care Ctr., Inc. v Kravitz, 198 AD3d at 142; Ozone Acquisition, LLC v McCarthy, 128 AD3d 920, 921; see generally Meadowbrook Ctr., Inc. v Buchman, 149 Conn App 177, 191-194, 90 A3d 219, 229-231 [Conn App Ct]).
Under the circumstances and on this record, the plaintiff's "factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d at 142). Accordingly, the Supreme Court should have granted that branch of the granddaughter's motion which was pursuant to CPLR 3211(a)(7) to dismiss the complaint.
DUFFY, J.P., IANNACCI, MILLER and ZAYAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court